UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DENNIS STRUTTON, JAMES PURK,       )
TROY SPENCER, MICHAEL GODDARD,     )
JAMIN SHAFER, TONY AMONETTE,       )
JOSEPH JOHNSON, TIM NELSON,        )
TIM DAILY, ROBERT LIEURANCE, and   )
CARL McDONALD,                     )
                                   )
              Plaintiffs,          )
                                   )
         vs.                       )      No. 4:04CV616-DJS
                                   )
ALAN BLAKE, and                    )
JOHN and JANE DOE(S),              )
                                   )
              Defendants.          )


ORDER

        This matter is before the Court on defendant Blake's

unopposed second motion for summary judgment.  The Court dismissed

the claims of plaintiffs Dennis Strutton, Carl McDonald, Michael

Goddard, Troy Spencer, Joseph Johnson, Tim Daily, Tony Amonette,

and Tim Nelson upon each plaintiff's voluntary motion to dismiss.

The claims against defendant John and Jane Does have also been

dismissed.  The Court is left with the claims of plaintiffs James

Purk, Jamin Shafer, and Robert Lieurance against defendant Alan

Blake, in his individual capacity.  Plaintiffs Purk, Shafer, and

Lieurance have all been civilly committed as sexually violent

predators ("SVP") under Missouri's Sexually Violent Predators Act

("SVPA"), Mo. Rev. Stat. §§ 632.480-513.  Plaintiffs Purk and

Shafer are housed at the Missouri Sexual Offenders Treatment Center ("MSOTC"). Plaintiff Lieurance, a former resident of the MSOTC, is currently housed at the St. Francois County Jail in Farmington, Missouri. Defendant Blake is the Chief Operating Officer at the MSOTC.

Plaintiffs' complaint alleges that defendant Blake has 1) denied plaintiffs access to the courts; 2) denied plaintiffs proper medical care; 3) denied plaintiffs adequate exercise; 4) denied plaintiffs the right to work; 5) denied plaintiffs meaningful treatment which will allow plaintiffs to be "cured"; 6) kept plaintiffs in confinement conditions worse than those provided to prisoners; 7) housed SVPs and those not yet determined to be SVPs together; and 8) denied plaintiffs internet access. The Court has reviewed defendant Blake's motion, to which plaintiffs have failed to respond, and will dismiss counts 1, 2, and 7 of plaintiffs' complaint and enter summary judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on all remaining counts for the reasons set forth below.

## Background

All matters set forth in the statement of uncontroverted facts of defendant Blake not specifically controverted by plaintiffs are deemed admitted for the purpose of summary judgment. E.D.Mo. L.R. 7-4.01(E). The Court has viewed the facts in a light most favorable to the non-movants, observed the local rule as stated above, and construed plaintiffs' pro se filings liberally.

The following facts are thereby established for purposes of the summary judgment motion.

Missouri's SVPA authorizes the civil commitment of SVPs, persons who suffer from a mental abnormality that makes them more likely to engage in predatory acts of sexual violence if not confined in a secure facility and who 1) have pled guilty or been found guilty of a sexually violent offense; 2) have been found guilty of a sexually violent offense by reason of mental disease or defect; or 3) were committed as a criminal sexual psychopath. Mo. Rev. Stat. § 632.480(5)(a)-(b). The SVPA provides that when probable cause exists to suspect that a person is an SVP, the person may be held pending the outcome of a civil commitment proceeding in the probate court. Mo. Rev. Stat. § 632.489. Confinement under the SVPA, however, is not punitive. See Kansas v. Hendricks, 521 U.S. 346, 362-63 (1997).

The MSOTC uses a cognitive-behavioral treatment model guided by a relapse prevention approach in treating SVP's. The MSOTC also provides treatment for detainees -- those not yet determined to be SVPs -- based upon this same treatment model, but without any emphasis on the detainee's sexual behavior. The MSOTC program consists of various phases and levels through which a sex offender must progress and acquire progressively more skills and tools to prevent future sexual re-offending. SVPs go through phase I and its associated levels 1-3 to develop the attitudes and behaviors that will facilitate their participation in the more

3

demanding and stressful treatment levels to follow. Detainees progress along phase I and its associated levels A-C, which are similar to those followed by SVP's.

When residents have shown difficulties meeting the expectations of the level system, they are placed on the readiness ward and must follow rules that are stricter and broader in scope than those of the level system. Privileges are not automatically granted on this ward. Residents of the ward are provided more immediate rewards in the form of tokens for positive behaviors. They must exchange tokens in order to obtain certain privileges.

Each resident at the MSOTC is assigned to a treatment team -- a multi-disciplinary team composed of a psychologist, a social worker, direct care/nursing staff, and recreation staff. (Meade Aff. [Ex. #169.5] ¶ 6.) The treatment teams may take privileges away from residents depending on their behavior without first giving notice.

At the end of phase I of their treatment, SVPs are offered the opportunity to take a polygraph test regarding the incidents in their sexual history. It is the professional judgment of the treatment teams at the MSOTC that an SVP cannot progress beyond a certain level in his treatment unless he is willing to admit to all the incidents in his sexual history. The information to which an SVP must admit relates only to general information and does not require an offender to go into the specific details of each incident in his sexual history.

All plaintiffs in this action are periodically evaluated by their treatment teams to determine if they should be advanced to a different level in their treatment. Plaintiffs Purk and Shafer previously resided on the readiness ward, but now currently reside on Blair 2, a level two (2) facility. Plaintiff Lieurance was on the readiness ward before his transfer and confinement at the St. Francois County Jail.

The MSOTC limits the amount of material residents may access at one time and restricts resident's access to personal property. The MSOTC does have a law library which residents are permitted to use. However, MSOTC residents are limited in the amount of paper and books they can have in their rooms for security reasons. They are allowed to have no more than four (4) inches of paperwork and four (4) books[1], including law books, in their rooms at one time. Plaintiffs also are given twenty (20) free copies per year and are charged forty (40) cents for each additional copy.

The MSOTC also enforces a mail policy. Mail from attorneys must be opened by the resident in front of MSOTC staff and the staff must determine that contraband is not present. Mail directed to an attorney is not checked unless there are clear and convincing clinical indications that it needs to be. (2d Blake

---

[1] The Court notes that plaintiffs and defendant Blake disagree as to whether four (4) or five (5) books are allowed in the residents' cells. As a more stringent limitation is more favorable to plaintiffs' claims, the Court interprets the limitation to be the smaller of the two, four (4) books.

Aff. [Doc. #169.2] ¶ 10.)  Mail not from an attorney is checked for contraband by MSOTC staff outside the presence of the residents.

MSOTC residents are restricted from certain types of communication and interaction with those outside the MSOTC for reasons of security and clinical treatment.  MSOTC residents are not allowed access to the internet because of the potential for accessing victims and accessing and viewing inappropriate sexual and/or violent material.  Contact visits with the residents are not allowed.  The television shows and movies available to residents are also limited.  For example, residents are not permitted to watch World Wrestling Federation programming, "Black Entertainment Television" music videos, and R-rated movies.  Additionally, MSOTC staff do not permit residents to work outside of the treatment center because of the potential danger to the public.  Some residents of the MSOTC who have expressed a willingness to work at assigned jobs have been allowed to work without compensation for reasons associated with their treatment.

Phone calls to attorneys are also limited.  MSOTC residents, with the exception of residents on the readiness ward and on level one (1), are allowed free phone calls totaling twenty (20) minutes each day.  All residents, however, are allowed to call their attorney of record using phones located in common areas.

To rehabilitate the residents and maintain the safety and security of the facility, its staff and residents, several restrictions are placed upon the residents by the MSOTC.  (2d Blake

Aff. [Doc. #169.2] ¶ 9.)  Residents are housed together based upon clinical need, as opposed to whether they are SVPs or detainees. However, residents are not allowed to help each other with any legal work for reasons of security and because of the potential for strong-arming.  (2d Blake Aff. [Doc. #169.2] ¶ 4.)  With respect to the residents' ability to exercise, residents and detainees at the MSOTC are allowed the opportunity to participate in leisure training walk groups at least five times per week.  Residents of the readiness ward are only allowed one hour of exercise outside each week.  It is the judgment of the MSOTC treatment teams that the weight machines at the MSOTC could be dangerous and pose a security risk.  Thus, the MSOTC only permits those residents at level three (3) or higher, who have made sufficient progress in their treatment, to use the weight machines.

MSOTC residents are not allowed to stay in their rooms during the day without express permission and are out of their rooms typically eight hours or more per day.  It is the judgment of the MSOTC treatment teams that allowing a resident to stay in his room and not participate in community activities can be detrimental to the resident's treatment and provides an opportunity for the resident to be depressed and exhibit negative behaviors.  Also for reasons of security, allowing residents to spend time in their rooms makes it more difficult for MSOTC staff to observe the residents' behavior.

Defendant Blake, as the Chief Operations Officer of the MSOTC, is responsible for creating, establishing, and implementing MSOTC practices and policies, and ensuring they are in accordance with the law and conform to the requirements of the Missouri Department of Mental Health. However, defendant Blake has no medical or dental training and ultimately has no input into medical treatment decisions relating to the physical condition of any of the residents of the MSOTC. (Blake Aff. [Doc. #169.1] ¶ 7.) When a medical request form is filled out by a resident, it is given to a nurse practitioner at the MSOTC to examine the particular resident, assess his physical condition, and provide any warranted medical treatment as soon as possible. (Smith Aff. [Doc. #169.6] ¶ 3.)

## Discussion

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient

to raise a genuine issue for trial.'" Burchett v. Target Corp.,
340 F.3d 510, 516 (8th Cir. 2003), quoting Rose-Maston v. NME
Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).

While plaintiffs do not surrender all constitutional
rights by their lawful detention, "detainee[s] simply do not
possess the full range of freedoms of . . . unincarcerated
individual[s]." Bell v. Wolfish, 441 U.S. 520, 546 (1979). The
United States Supreme Court has held that there must be a "mutual
accommodation between institutional needs and objectives and the
provisions of the Constitution that are of general application."
Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).
Additionally, "maintaining institutional security and preserving
internal order and discipline are essential goals that may require
limitation or retraction of the retained constitutional rights of
[detainees]." Bell, 441 U.S. at 546. To accomplish these goals,
detention facility administrators should be given "wide-ranging
deference in the adoption and execution of policies and practices
that in their judgment are needed to . . . maintain institutional
security . . . and, in the absence of substantial evidence [that
the policies and practices are unnecessary], courts should
ordinarily defer to their expert judgment in such matters." Id. at
547-48 (citations omitted). Below the Court addresses each of the
counts asserted by plaintiffs Purk, Shafer, and Lieurance against
defendant Blake.

**1.   Plaintiffs' access to the courts claims will be dismissed for failure to allege an actual injury**

Prisoners have a constitutional right to "meaningful" access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Id.</u>  Plaintiffs allege that their constitutional rights are violated because they 1) do not have a constitutional law library, 2) cannot help each other in legal work, 3) do not have access to those trained in the field of law, 4) have a four (4) book and a four (4) inch stack of paper limitation on the amount of materials they may keep in their cells, 5) are punished for calling their attorneys, 6) have their mail opened by the MSOTC staff, 7) are denied attorney client confidentiality on telephone calls because phones are in open areas, 8) are denied access to personal funds to purchase law books, 9) are denied unimpaired access to the habeas writ, and 10) have restrictions on copying and are charged a high price for making copies.

Plaintiffs must have suffered an actual injury to establish a claim of denial of access to a court. <u>Christopher v. Hardbury</u>, 536 U.S. 403, 415 (2002).  The United States Supreme Court has noted that:

> [T]he inmate . . . must . . . demonstrate that the
> alleged shortcomings in the library or legal assistance

10

program hindered his efforts to pursue a legal claim. He
might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical
requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have
known. Or that he had suffered arguably actionable harm
that he wished to bring before the courts, but was so
stymied by inadequacies of the law library that he was
unable even to file a complaint.

Lewis v. Casey, 518 U.S. 343, 351 (1996).  Although the Supreme

Court's examples are certainly not exhaustive, they reflect that

plaintiffs need to have been prevented from accessing the courts

*before* the current action's complaint was filed.  Plaintiffs do not

reference any past action brought before the courts that was

dismissed or any wrong which plaintiffs were prevented from

bringing before the courts.  Plaintiffs have not alleged any past

harm or injury that caused them to file this complaint.

To challenge the shortcomings of the MSOTC's law library,

plaintiffs must show that the alleged shortcomings in the library

have hindered plaintiffs' efforts to pursue their legal claims.

Id.  Plaintiffs Purk and Shafer responded to interrogatories posed

by defendant Blake.[2]  Plaintiffs were asked how they have been

injured as a result of the denial of access to an adequate law

library.  Plaintiffs Purk and Shafer responded that the denial of

access has prevented them from preparing this case and conforming

---

[2]  Defendant Blake asserts that plaintiff Lieurance did not
provide interrogatory answers because defense counsel learned too
late that plaintiff Lieurance was no longer a resident at the
MSOTC. (Mem. in Supp. of Mot. for Summ. J. [Doc. #169] at 5 n.3.)

to the procedural rules of this Court. However, that does not constitute an actual injury that existed at the time the complaint was filed. Plaintiffs have effectively brought their case before this Court.

When asked how they have been harmed by the denial of access to persons trained in law, plaintiffs Purk and Shafer only responded that they were denied access to someone trained in the field of law as opposed to stating a specific injury. When plaintiffs were asked how they have been punished for calling their attorneys, plaintiff Shafer stated that he had not been punished for calling his attorney. (Shafer's Answer to Interrogs. [Doc. #169.10] ¶ 4.) Plaintiff Purk stated he did not have a phone card and could not call his attorney because he was currently housed in a level one (1) facility. (Purk's Answer to Interrogs. [Doc. #169.9] ¶ 4.) However, "the state (or county) is not required to pay for inmates' phone calls, even to their attorneys." <u>Lane v. Hutcheson</u>, 794 F. Supp. 877, 881 (E.D. Mo. 1992). Additionally, as noted above, plaintiff Purk is now in a level two (2) facility and MSOTC residents are allowed free phone calls totaling twenty (20) minutes each day, unless the residents are in the readiness ward or in a level one (1) facility. Furthermore, all residents are permitted to call their attorney of record.

The United States Court of Appeals for the Eighth Circuit has addressed issues similar to plaintiffs' claim that the MSOTC's

mail policy impedes plaintiffs' access to the courts.  The Eighth
Circuit held that "[j]ailers are not required to take the extra
time and effort to open mail in the inmate's presence when the mail
is not confidential."  Harrod v. Halford, 773 F.2d 234, 235 (8th
Cir. 1985).  However, if a letter is from an attorney to an inmate,
jailers can open the letter in the presence of the inmate.  Wolff
v. McDonnell, 418 U.S. 539, 576-77 (1974).  The state can "require
any such communications to be specially marked as originating from
an attorney, with his name and address being given, if they are to
receive special treatment."  Id.  The MSOTC mail policy, outlined
above, does not violate the resident's constitutional rights as the
MSOTC staff opens mail from attorneys in front of the resident
addressee.

Plaintiffs Purk, Shafer, and Lieurance have not responded
to defendant Blake's assertion that there is no cognizable injury
and have failed to allege how their denial of access to the courts
has rendered them incapable of bringing an actionable harm before
the courts.  Therefore, plaintiffs' denial of access to the courts
claims will be dismissed.

## 2.    Plaintiffs' inadequate medical care claims will be dismissed for failure to allege an actual injury

In order to establish an Eighth Amendment violation on
the basis of inadequate medical care, a plaintiff must allege acts
or omissions that reveal "deliberate indifference to serious

13

medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995), <u>quoting</u> <u>Johnson v. Busby</u>, 953 F.2d 329, 351 (8th Cir. 1991). To prove deliberate indifference, a plaintiff must show that a defendant "knew of, yet disregarded, an excessive risk to [the plaintiff's] health." <u>Logan v. Clarke</u>, 119 F.3d 647, 649 (8th Cir. 1997), <u>citing</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

Interrogatory Number 6 asked each plaintiff to:

> [S]tate each date that you were denied medical care and in each such instance state: a) the nature of your illness or injury, b) whether you specifically requested medical care for your illness or injury, c) if requested, the identity of the person or persons refusing the medical care and d) any long-term effects of the denial of medical care in each instance.

(See, e.g., Purk's Answer to Interrogs. [Doc. #169.9] ¶ 6.) Plaintiffs Purk and Shafer both admit that they have not been denied medical care. (Purk's Answer to Interrogs. [Doc. #169.9] ¶ 6; Shafer's Answer to Interrogs. [Doc. #169.10] ¶ 6.) Plaintiffs have failed to allege any instance where defendant Blake failed to provide adequate medical treatment. Thus, the inadequate medical care claims of plaintiffs Purk, Shafer, and Lieurance will be dismissed.

**3. Plaintiffs have not established that defendant's exercise policies for plaintiffs constitute a substantial departure from accepted professional judgment**

Involuntarily committed mental patients have "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by those interests." Youngberg v. Romeo, 457 U.S. 307, 324 (1982). However, with regard to the nature of the treatment, the state "enjoy[s] wide latitude in developing treatment regimens" for mental health patients. Kansas v. Hendricks, 521 U.S. 346, 368 n.4 (1997). In short, those responsible for a civil detainee's care and treatment do not have to employ the best possible alternative or use the least restrictive means available. See Collingnon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998) (finding that a disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim). "[A] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323.

Plaintiffs allege that they are becoming "obese" because they are not allowed to work out with exercise equipment.

Complaints of lack of exercise in a secured environment constitute a condition of confinement claim. See Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). As noted above, plaintiffs are given exercise periods five times a week and stretching periods two times a week. Additionally, MSOTC residents are not allowed to stay in their rooms during the day without express permission and are out of their rooms typically eight hours or more per day. Furthermore, it is the judgment of the MSOTC treatment teams that the weight machines at the MSOTC could be dangerous and pose a security risk. (Blake Aff. [Doc. #169.1] ¶ 4.) Without evidence or argument to the contrary, the Court does not find that the decisions by the professionals at the MSOTC with regard to plaintiffs' ability to exercise are a substantial departure from accepted professional judgment, practice, or standards. Furthermore, the conditions described above do not constitute cruel and unusual punishment. See Hosna v. Groose, 80 F.3d 298, 206 (8th Cir. 1996) (holding that limiting an inmate to three hours per week of out-of-cell exercise does not violate the constitution). Consequently, the Court will enter judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on their denial of adequate exercise claims.

**4.  Plaintiffs have not established that defendant's work policies for plaintiffs constitute a substantial departure from accepted professional judgment**

Plaintiffs do not identify what laws the MSOTC work policy violates. As has been noted by the United States Court of Appeals for the Eighth Circuit, "[t]here is no constitutional right to prison wages and any such compensation is by the grace of the state." Jennings v. Lombardi, 70 F.3d 994, 995 (8th Cir. 1995) (citations omitted). Furthermore, prisoners do not have a constitutional right to a prison job. DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000). Similarly, civilly committed persons, such as plaintiffs, do not have this alleged right to work.

Professionals at the MSOTC have decided that residents at plaintiffs' level of treatment are not permitted to work for reasons of security and public safety. (Blake Aff. [Doc. #169.1] ¶ 9.) Plaintiffs have not shown that defendant Blake's decision to deny plaintiffs the opportunity to work is such a substantial departure from accepted professional judgment as to demonstrate that defendant Blake actually did not base the decision on such a judgment. See Youngberg, 457 U.S. at 323. Consequently, the Court will enter judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on their claims that plaintiffs have been denied their right to work.

**5. Plaintiffs have not established that defendant's treatment policies for plaintiffs constitute a substantial departure from accepted professional judgment**

It is the judgment of professionals -- the treatment teams at the MSOTC -- that plaintiffs are being treated appropriately according to their conditions and progress to date. (Bellew-Smith Aff. [Doc. #169.4] ¶¶ 6-7.) Similar to plaintiffs' medical indifference claims discussed *supra*, plaintiffs have not offered evidence or argument to rebut defendant's assertions or established that defendant Blake's decisions are such a substantial departure from accepted professional judgment as to demonstrate that defendant Blake actually did not base the decision on such a judgment. See Youngberg, 457 U.S. at 323. Thus, the Court is persuaded that plaintiffs' claims must fail. Consequently, the Court will enter judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on their claims that plaintiffs have been denied meaningful treatment.

**6.    Plaintiffs have not established that defendant's policies with respect to plaintiffs' conditions of confinement constitute a substantial departure from accepted professional judgment**

Plaintiffs contend that their conditions of confinement are worse than those provided to prisoners. Additionally, plaintiffs assert that they are not given notice before being punished -- an argument which the Court interprets as a procedural due process claim. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id. at 321-22. However, plaintiffs have only

18

asserted that they have less movement and freedom than a Missouri prisoner has in prison. Even if the Court were to interpret the asserted facts in plaintiffs' second amended complaint to be the improper conditions of confinement, plaintiffs have still not shown that defendant Blake's decisions regarding plaintiffs' conditions of confinement are such substantial departures from accepted professional judgments as to demonstrate that defendant Blake actually did not base the decisions on such judgments. See id. at 323. Consequently, the Court will enter judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on their claims that plaintiffs' conditions of confinement are worse than those undergone by prisoners.

**7. Plaintiffs' claims that SVPs and detainees are unconstitutionally housed together do not state a claim upon which relief may be granted and will be dismissed**

An action fails to state a claim upon which relief may be granted if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978). SVPs and those not yet determined to be SVPs are housed together at the MSOTC because of clinical need. (Blake Aff. 2d [Doc. #169.2] ¶ 3.) Plaintiffs do not cite to any Missouri statute which prohibits housing the two groups together. Additionally, this Court is not aware of any precedent which finds that housing the

two groups together is unconstitutional.  Thus, plaintiffs have not
stated a claim on this issue, and the Court will dismiss
plaintiffs' claims that SVPs and those not yet determined to be
SVPs are unconstitutionally housed together for failure to state a
claim.

**8.    Plaintiffs have not established that defendant's policies with respect to plaintiffs' access to the internet constitute a substantial departure from accepted professional judgment**

It is the opinion of professionals -- the MSOTC treatment
teams -- that plaintiffs should not be allowed to access the
internet particularly because it would allow them to access sexual
and/or violent material.  (Blake Aff. 2d [Doc. #169.2] ¶ 3.)
Plaintiffs have not shown that defendant Blake's decision to deny
plaintiffs access to the internet is such a substantial departure
from accepted professional judgment as to demonstrate that
defendant Blake actually did not base the decision on such a
judgment. See <u>Youngberg</u>, 457 U.S. at 323.  Consequently, the Court
will enter judgment in favor of defendant Blake and against
plaintiffs Purk, Shafer, and Lieurance on their claims that
plaintiffs are unconstitutionally denied access to the internet.

<u>Conclusion</u>

For the above reasons, the Court will dismiss plaintiff
Purk's, Shafer's, and Lieurance's claims that defendant Blake
denied plaintiffs access to the courts, denied plaintiffs proper

medical care, and housed SVPs and those not yet determined to be SVPs together. The Court will enter judgment in favor of defendant Blake and against plaintiffs Purk, Shafer, and Lieurance on plaintiffs' claims that defendant Blake denied plaintiffs adequate exercise, denied plaintiffs the right to work, denied plaintiffs meaningful treatment which would allow plaintiffs to be "cured," housed plaintiffs in confinement conditions worse than those provided to prisoners, and denied plaintiffs internet access.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Blake's unopposed second motion for summary judgment [Doc. #168] is granted.

Dated this ___14th___ day of February, 2006.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE